**FORREST v. COPPARD.  (No. 7839.)**

Court of Civil Appeals of Texas. San Antonio. Nov. 18, 1927.

Rehearing Denied Dec. 23, 1927.

1. **Evidence ⚖⇒236(3)—Conversation and letters of deceased member of partnership were inadmissible as evidence that partnership bank having record title held land in trust as security.**

In action by receiver to remove cloud from title on land held by bank, where bank was partnership, conversations and letters of one of partners who was dead to show that land was held in trust as security for debt were inadmissible.

2. **Judgment ⚖⇒478—Judgments adjudging title out of defendant cannot be collaterally attacked; defendant's remedy being by review.**

Where action was brought to quiet title to land which had twice been adjudicated out of defendant, who had not reviewed judgment but sought to destroy judgments by collateral attack on their validity, *held* that judgments were not subject to collateral attack; defendant's right being to review directly, which was not exercised.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by M. Coppard, trustee in bankruptcy of the bankrupt estate of the Emmet Bank, against J. P. Forrest and others, to remove a cloud from the title to certain land held by the bank. From a judgment removing all clouds from the title, the named defendant appeals. Affirmed.

T. H. Ridgeway, of San Antonio, for appellant.

Arnold & Cozby, of San Antonio, for appellee.

FLY, C. J. This is an action instituted by appellee, as the trustee of the bankrupt estate of the Emmet Bank, a partnership, against J. P. Forrest, Hugh B. Rice, and Texas State Bank & Trust Company, to remove all clouds from the title of said Emmet Bank to certain land. Rice filed a disclaimer, Texas State Bank & Trust Company filed a general demurrer and general denial, and J. P. Forrest filed an answer setting up a claim to the land and praying for ascertainment of the amount of money owed by him to the Emmet Bank, and, upon payment by him of that sum, that two deeds executed by him to the land be set aside and two judgments as to the land against him be also set aside. The court instructed the jury to return a verdict for appellee, which was accordingly done, and judgment was rendered removing all clouds from the title and vesting the same in appellee, and all costs were taxed against J. P. Forrest, appellant, except the costs incurred by reason of the Texas State Bank & Trust Company and Hugh B. Rice being parties, which were taxed against appellee, and it was ordered that J. P. Forrest take nothing by his cross-action. Forrest alone appealed.

The facts show that appellant had title from Miss Ruby George to 640 acres of land in Bexar and Atascosa counties, patented to Enoch Jones in 1884, which appellant sold to S. A. Meeks on December 30, 1909, receiving a vendor's lien thereon to secure purchase money in the sum of $3,270. Meeks sold the land to Wm. G. Bean, reciting the incumbrance held by Forrest. Afterwards appel-

lant instituted suit against S. A. Meeks, Wm. G. Bean, and W. J. Blair, in which suit the Emmet Bank intervened, to recover his debt and foreclose a lien. The court decreed that appellant herein was entitled to a judgment for his debt for $3,270 principal and the interest and attorney's fees, and a foreclosure of his vendor's lien on the land, and the intervener was entitled to a judgment for its debt and to have a lien foreclosed on the proceeds of the judgment against Meeks and others; and judgment was accordingly so rendered, and an order of sale was issued and the land sold. A deed was made by the sheriff to M. J. Arnold. M. J. Arnold conveyed the land to T. L. Conroy. The last named afterwards sued appellant and a number of other parties who might claim the land, to remove cloud from title to survey 711, and obtain judgment for the same. On July 6, 1912, J. P. Forrest acknowledged execution of a special warranty deed to T. L. Conroy conveying to him the land in controversey. After the death of T. L. Conroy, his surviving wife, Mrs. Elise G. Conroy, conveyed to M. Coppard, trustee in bankruptcy for the Emmet Bank, all her right and interest in survey No. 711.

It is admitted, in effect, that the record title to the land was in the estate of the bankrupt Emmet Bank, and appellant sought to destroy that title on parol testimony of an agreement between him and T. L. Conroy, that the latter should hold the title to the land in trust for appellant as security for a debt owed by appellant to the Emmet Bank. It was claimed also by appellant that Thomas L. Conroy bequeathed all his property to his wife Elise G. Conroy, and she became the holder of the legal title to the land, and that, as she wrote to him a letter, which he sought to introduce in evidence, acknowledging his right to the land, he owned the land. The court excluded the parol testimony as well as the letter from Mrs. Conroy and letters written by appellant to T. L. Conroy and by the latter to him. There are fourteen propositions presented, some of them quite voluminously, but, when sifted down, they reveal only a complaint at the action of the court in excluding the conversations with T. L. Conroy and the letters indicated. Appellant denominates the letter written by Mrs. Conroy to him a deed to the land in controversy, but it has none of the essentials of a deed.

[1] It was in evidence that M. J. Arnold bought the land at sheriff's sale for the Emmet Bank and conveyed it to Thomas L. Conroy to be held in trust for that bank. Conroy was one of the partners in the partnership known as the Emmet Bank and in all the conveyances he was acting for the partnership composing that bank. There was

nothing in all the circumstances detailed that tended to show that appellant had any interest in the land, which was sold to satisfy a debt due by him to the bank. He had no right to detail conversations with a dead man to ingraft a trust on the land. He had no right to make a collateral attack on the solemn judgments of courts. It would be a dangerous precedent and a menace to record titles to permit parties affected by such records to destroy such records by conversations with and letters from a man whose lips have been silenced by death.

[2] Twice, by solemn judgments, was the title to the land divested out of appellant, and no court will permit an attack in a collateral proceeding on those judgments. Appellant had an opportunity to have those judgments reviewed; he failed to avail himself of that privilege. He was authorized to make a direct attack on the judgment, but he did not so assail them. They were, and are, valid judgments and cannot be destroyed by collateral attacks on their validity. Treadway v. Eastburn, 57 Tex. 209; Jones v. City of Jefferson, 66 Tex. 576, 1 S. W. 903; Davis v. Robinson, 70 Tex. 396, 7 S. W. 749; Williams v. Haynes, 77 Tex. 283, 13 S. W. 1029, 19 Am. St. Rep. 752; Brooks v. Powell (Tex. Civ. App.) 29 S. W. 809. The rule is intensified and rendered more imperative and absolute in this case, when it is attempted to read into a judgment a private agreement with a man long since dead. Irion v. Bexar County, 26 Tex. Civ. App. 527, 63 S. W. 550.

Not one of the propositions is well founded, and the judgment will be affirmed.